UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARCELINO PALOMO,                )   Case No. CV 05-2447-RC
                                 )
                Plaintiff,       )
                                 )
vs.                              )   OPINION AND ORDER
                                 )
JO ANNE B. BARNHART,             )
Commissioner of the Social       )
Security Administration,         )
                                 )
                Defendant.       )
_____)

     Plaintiff Marcelino Palomo filed a complaint on April 1, 2005,
seeking review of the Commissioner's decision denying his application
for disability benefits.  On September 19, 2005, the Commissioner
answered the complaint, and on December 1, 2005, the parties filed
their joint stipulation.


                           BACKGROUND

                               I

     On December 28, 1999, plaintiff applied for disability benefits
under Title II of the Social Security Act ("the Act"), 42 U.S.C. §
423, claiming an inability to work since October 30, 1998, due to high

1   blood pressure.  Certified Administrative Record ("A.R.") 56-58, 66.

2   The plaintiff's application was denied on March 27, 2000.  A.R. 50-53.

3   The plaintiff then requested an administrative hearing, which was held

4   before Administrative Law Peter Baum ("ALJ Baum") on September 12,

5   2001.  A.R. 28-45, 54-55.  On December 10, 2001, ALJ Baum issued a

6   decision finding plaintiff is not disabled.  A.R. 9-19.  The plaintiff

7   appealed this decision to the Appeals Council, which denied review on

8   October 4, 2002.  A.R. 4-8, 321-22.

9

10      On December 6, 2002, plaintiff filed his first complaint seeking

11  review of the Commissioner's decision denying him disability benefits,

12  Palomo v. Barnhart, CV 02-9129-RC ("Palomo I").[1]  On October 8, 2003,

13  this Court granted plaintiff's motion for summary judgment and

14  remanded the matter to the Social Security Administration under

15  sentence four of 42 U.S.C. § 405(g).[2]  The Appeals Council, in turn,

16  remanded the matter for further administrative proceedings, A.R. 275-

17  76, and on November 10, 2004, Administrative Law Judge Edward P.

18  Schneeberger ("the ALJ") held a new administrative hearing.  A.R. 225-

19  60.  On January 7, 2005, the ALJ issued a decision finding plaintiff

20  is not disabled.[3]  A.R. 205-16.  This decision is now before this

21

22      [1]  Pursuant to Fed. R. Evid. 201, this Court takes judicial
23  notice of relevant documents in Palomo I.

24      [2]  On June 18, 2003, while Palomo I was pending in this
    Court, plaintiff filed a new application for Title II disability
25  benefits, and on November 21, 2003, plaintiff filed an
    application for supplemental security income ("SSI") benefits.
26

27      [3]  The ALJ considered plaintiff's 2003 applications for
    Title II and SSI disability benefits when considering the remand
28  of plaintiff's earlier Title II application.  A.R. 209.

1  Court for review.

2

3                                 **II**

4        The plaintiff, who was born in Mexico on July 17, 1941, is

5  currently 65 years old.  A.R. 33, 56, 61, 64, 332.  He has a third-

6  grade education and is unable to communicate in, or read and write,

7  English.  A.R. 33-34, 72, 349.  Plaintiff has previously worked as a

8  concrete finisher, a cable installer, a laminator, a forklift

9  operator, a construction worker, and an assembler.  A.R. 67, 79-99,

10  102-09, 244-49, 253, 344, 358-70.

11

12        This Court, in its Palomo I decision, summarized the relevant

13  medical evidence as follows:[4]

14

15        Between September 30 and December 23, 1998, plaintiff

16        received treatment at the Friendly Hills Medical Center,

17        where he was diagnosed with hypertension and obesity, among

18        other conditions.  A.R. 139-50.  An echocardiogram taken

19        November 10, 1998, showed marked sinus bradycardia.[5]  A.R.

20        136, 146.  Since November 3, 1998, William S. Hitrec, M.D.,

21        has treated plaintiff for hypertension, arteriosclerotic

22

23  ─────────────────────

24        [4]  The Court has renumbered footnotes 1-7 from Palomo I here
    as footnotes 5-6 and 8-11 to preserve continuity within this
    opinion.

25

26        [5]  Sinus bradycardia is a "slow sinus rhythm, with a heart
    rate of less than 60 beats per minute in an adult; it is common
27  in young adults and athletes but is also a manifestation of some
    disorders."  Dorland's Illustrated Medical Dictionary, 238 (29th
28  ed. 2000).

                                     3

heart disease, hyperlipidemia,[6] being overweight,
degenerative changes in the dorsal spine with kyphosis and
other maladies.  A.R. 203-04.[[7]]  On April 18, 2000, Dr.
Hitrec found plaintiff's condition to be moderately severe,
and further found plaintiff to be completely and permanently
disabled.  Id.

On January 14, 1999, Dr. Roberto Vaca Aguilar diagnosed
plaintiff with dorsal scoliosis on the left side,
degenerative osteoarthropathy, primarily in the dorsal
region, and dorsal kyphosis.[8]  A.R. 132, 191.  An
electrocardiogram taken March 13, 1999, showed slight
systolic overload in the left ventricle with a hemiblock of
the anterior fasciculus[9] and no evidence of necrosis or
ischemia while resting.[10]  A.R. 128, 187.  Another

---

[6]  Hyperlipidemia is "a general term for elevated
concentration of any or all of the lipids in the plasma."
Dorland's Illustrated Medical Dictionary at 852.

[7]  The plaintiff testified at the post-remand hearing that
he stopped treating with Dr. Hitrec when Dr. Hitrec retired in
1999 or 2000.  A.R. 229-30.  On remand, the plaintiff did not
produce any further medical records from Dr. Hitrec even though
the ALJ provided plaintiff an opportunity for him to do so.  A.R.
209, 277-78.

[8]  Kyphosis is "abnormally increased convexity in the
curvature of the thoracic spine as viewed from the side;
hunchback."  Dorland's Illustrated Medical Dictionary at 951.

[9]  A fasciculus is "a small bundle or cluster."  Dorland's
Illustrated Medical Dictionary at 654.

[10]  Ischemia is a "deficiency of blood in a part, usually
due to functional constriction or actual obstruction of a blood
vessel."  Dorland's Illustrated Medical Dictionary at 920.

electrocardiogram, taken July 13, 1999, showed septal
hypertrophy.[11]  A.R. 124, 184.  A Doppler echocardiogram
taken July 31, 1999, showed slight mitral, pulmonary and
tricuspid insufficiencies, left ventricular concentric
hypertrophy, slight sclerosis of the aortic valve, and a
slightly enlarged iliac artery.  A.R. 119, 121, 179, 181.  A
stress test taken the same day showed no evidence of rhythm
or conduction disorders or ischemia.  A.R. 120, 180.

On February 8, 2000, David Ginns, M.D., a consulting
cardiologist, diagnosed plaintiff with heart disease and
hypertension.  A.R. 152-56.  Dr. Ginns stated:

> The [plaintiff] has hypertension -- under fair
> control.  He had a resting electrocardiogram done
> today, which is interpreted to be normal.  He has
> chest pains that would be somewhat atypical for
> angina pectoris, accompanied by a negative
> treadmill test performed 7/31/99.  He does have
> mild abnormalities at rest on an echocardiogram.
> At this time, a complete physical examination is
> unremarkable.  There is no evidence, by
> examination, of cardiac enlargement at this time.
> There is no evidence of heart failure.

---

[11]  Hypertrophy is "the enlargement or overgrowth of an
organ or part due to an increase in size of its constituent
cells." Dorland's Illustrated Medical Dictionary at 859.

5

1    A.R. 155.  Thus, Dr. Ginns concluded that plaintiff . . .

2    "should be able to lift or carry 50 [pounds] occasionally

3    and 25 [pounds] frequently.  He should be able to stand or

4    walk 6 hours cumulatively in an 8[-]hour day.  He should be

5    able to do frequent stooping and crouching."  Id.

6

7    Most recently, in March 2001, plaintiff was examined at the

8    County-USC Medical Center and diagnosed with stable angina,

9    hypertension and arthralgia.  A.R. 195, 199-200.

10

11   Palomo I at 2:24-5:7 (footnote omitted and footnote added).

12

13       New medical records show plaintiff has received additional

14   medical care at County-USC Medical Center, A.R. 289-91, 293-316, 375-

15   406, 408-27, where he was diagnosed with diverticulitis.[12]  A.R. 377,

16   383-84, 395.  A barium enema given October 23, 2002, showed sigmoid

17   diverticulosis[13] without evidence of diverticulitis.  A.R. 376.

18   Cardiac perfusion scintigraphy taken December 3, 2002, was negative

19   for left ventricular myocardial ischemia/scar and showed a normal

20   global left ventricular function and wall motion.  A.R. 306, 375, 409.

21

22       [12]  Diverticulitis is "inflammation of a diverticulum,
     especially inflammation related to colonic diverticula, which may
23   undergo perforation with abscess formation."  Dorland's
     Illustrated Medical Dictionary at 537.  A diverticulum is "a
24   circumscribed pouch or sac of variable size occurring normally or
     created by herniation of the lining mucous membrane through a
25   defect in the muscular coat of a tubular organ."  Id.
26

27       [13]  Diverticulosis is "the presence of diverticula,
     particularly of colonic diverticula, in the absence of
28   inflammation."  Dorland's Illustrated Medical Dictionary at 537.

Upper gastrointestinal x-rays showed August 1, 2003, showed a posterior duodenal ulcer.  A.R. 310, 312-14, 316.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), reviews the Commissioner's decision denying plaintiff disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision.  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006); Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

"In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001).  "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. §§

1  423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

2  "The claimant bears the burden of establishing a prima facie case of

3  disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995),

4  cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273,

5  1289 (9th Cir. 1996).  In this case, since plaintiff's disability

6  insured status expired on December 31, 2003,[14] A.R. 215, plaintiff

7  must show he was either permanently disabled or subject to a condition

8  which became so severe as to disable him prior to that date.  Tidwell

9  v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); Armstrong v. Comm'r of

10 the Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998).

11

12     The Commissioner has promulgated regulations establishing a five-

13 step sequential evaluation process for the ALJ to follow in a

14 disability case.  20 C.F.R. §§ 404.1520, 416.920.  In the **First Step**,

15 the ALJ must determine whether the claimant is currently engaged in

16 substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).

17 If not, in the **Second Step**, the ALJ must determine whether the

18 claimant has a severe impairment or combination of impairments

19 significantly limiting him from performing basic work activities.  20

20 C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the **Third Step**, the ALJ

21 must determine whether the claimant has an impairment or combination

22 of impairments that meets or equals the requirements of the Listing of

23 Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20

24 C.F.R. §§ 404.1520(d),  416.920(d).  If not, in the **Fourth Step**, the

25 ALJ must determine whether the claimant has sufficient residual

26

27     [14]  The plaintiff does not challenge the ALJ's determination
   that he last met the Title II insured status requirements on
28 December 31, 2003.

8

1  functional capacity despite the impairment or various limitations to
2  perform his past work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If not,
3  in **Step Five**, the burden shifts to the Commissioner to show the
4  claimant can perform other work that exists in significant numbers in
5  the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).

6

7       Applying the five-step sequential evaluation process, the ALJ
8  found plaintiff has not engaged in substantial gainful activity during
9  the period at issue.  (Step One).  The ALJ then found plaintiff has
10  severe heart disease and a duodenal ulcer (Step Two); however, he does
11  not have an impairment or combination of impairments that meets or
12  equals a Listing.  (Step Three).  The ALJ next determined plaintiff is
13  able to perform his past relevant work as a machine operator and
14  forklift operator; therefore, he is not disabled.  (Step Four).

15

16                                   **IV**

17       A claimant's residual functional capacity ("RFC") is what he can
18  still do despite his physical, mental, nonexertional, and other
19  limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001);
20  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,
21  the ALJ found plaintiff retains the RFC to perform "the full range of
22  medium exertional work."[15]  A.R. 215.  However, plaintiff contends the
23  ALJ's finding is not supported by substantial evidence because the ALJ
24  improperly determined he is not credible.

25

26  ─────────────────────
27       [15]  Under Social Security regulations, "[m]edium work
    involves lifting no more than 50 pounds at a time with frequent
    lifting or carrying of objects weighing up to 25 pounds."  20
28  C.F.R. §§ 404.1567(c), 416.967(c).

As set forth in Palomo I, plaintiff testified at his initial administrative hearing that:

> when he bends over or stands up too quickly, he becomes light-headed and dizzy and feels like he is "drunk," a feeling that lasts for a few seconds. A.R. 35-36. Similarly, plaintiff testified his medication makes him feel "drunk" or sleepy, and he does not take it if he is going to drive. A.R. 37-38, 42-43. The plaintiff also stated he sometimes gets chest pains, and he gets fatigued and lies down once or twice a day for 15 minutes at a time. A.R. 36-37. The plaintiff further stated he can walk for about half an hour before having to rest. A.R. 41. Although plaintiff testified he did not know how much weight he could currently lift, he opined he can no longer lift the 50-75 pounds he used to lift. A.R. 42.

Palomo I at 9:1-12.

At the administrative hearing following remand, plaintiff testified when he bends over and stands up again he experiences "pressure" and a very strong headache, his toes hurt at night, and his chest, back, feet, and fingers hurt. A.R. 235, 238-39. The plaintiff also stated he stopped working as a forklift operator in 1998 because he was "feeling bad" and was tired and could not breathe. A.R. 241-45. Plaintiff testified he has never received physical therapy for his back, has not had any surgery on his back or fingers, and was not receiving any treatment for his back, feet, or fingers at the time of

1  the administrative hearing, but he did receive acupuncture and massage

2  from a chiropractor.  A.R. 236-37.  Plaintiff also averred he has

3  never been hospitalized for heart problems or had a heart attack.

4  A.R. 239.  Indeed, plaintiff admitted the only treatment he is

5  currently receiving is blood pressure medication, which caused his

6  head and stomach to hurt.  A.R. 237-38.  Since his treating physician

7  recommended he walk, plaintiff testified he rides his bicycle to and

8  from the park, which is about 4-5 minutes away, and walks for 30

9  minutes, but he feels tired after exercising and goes home and lies

10  down.  A.R. 239-41.


12       Once a claimant has presented objective evidence he suffers from

13  an impairment that could cause pain or other nonexertional

14  limitations,[16] the ALJ may not discredit the claimant's testimony

15  "solely because the degree of pain alleged by the claimant is not

16  supported by objective medical evidence."  Bunnell v. Sullivan, 947

17  F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d

18  882, 885 (9th Cir. 2004).  Thus, if the ALJ finds the claimant's

19  subjective complaints are not credible, he must make specific findings

20  to support that conclusion.  Moisa, 367 F.3d at 885; Bruton v.

21  Massanari, 268 F.3d 824, 828 (9th Cir. 2001).  Furthermore, if there

22  is medical evidence establishing an objective basis for some degree of

23  pain and related symptoms, and no evidence affirmatively suggesting

24  that the claimant is malingering, the ALJ's reasons for rejecting the

26       [16] "While most cases discuss excess pain testimony rather
27  than excess symptom testimony, rules developed to assure proper
    consideration of excess pain apply equally to other medically
28  related symptoms."  Swenson v. Sullivan, 876 F.2d 683, 687-88
    (9th Cir. 1989).

1    claimant's testimony must be "clear and convincing."   Morgan v. Comm'r
2    of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Burch v.
3    Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

4

5        "Factors that the adjudicator may consider when making such
6    credibility determinations include the claimant's daily activities,
7    inconsistencies in testimony, effectiveness or adverse side effects of
8    any pain medication, and relevant character evidence."   Orteza v.
9    Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (per curiam); Thomas v.
10   Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).   Here, the ALJ gave
11   several reasons for determining plaintiff is not credible.   A.R. 213-
12   14.

13

14       First, the ALJ found that "[o]n January 27, 2003, the [plaintiff]
15   refused to fill out a pain questionnaire because he had no pain."
16   A.R. 214 (citation omitted); see also A.R. 357 (Report of Contact,
17   dated January 27, 2003, stating "[c]all from [plaintiff] in regards to
18   the [pain questionnaire.] He will not be filing [sic] it out because
19   he does not feel any pain.  I explained that the application noted
20   problems with [his] back, neck and headaches.  He reported a [history]
21   of these conditions in the past, **but not an ongoing problem.**  Asked
22   about dizziness and headaches . . . [he] **reports no ongoing**
23   **limitations.**" (emphasis added)).   The ALJ may properly rely on
24   inconsistencies in a claimant's statements to determine he is not a
25   credible witness.   Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d
26   1190, 1196 (9th Cir. 2004); Connett v. Barnhart, 340 F.3d 871, 873-74
27   (9th Cir. 2003).   Here, plaintiff's testimony conflicts with the
28   information he provided in the questionnaires.

1    Second, the ALJ found plaintiff's "only prescription medications
2    are for cholesterol, hypertension (now under control), and his ulcer.
3    . . ." A.R. 213; see also A.R. 202, 320.[17]  An ALJ may properly
4    consider the claimant's failure to take prescription pain medication
5    in concluding his pain is not as severe as he claims.  See Orteza, 50
6    F.3d at 750 (upholding ALJ's adverse credibility determination that
7    relied, in part, on the claimant's failure to require prescription
8    pain medication); Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir.
9    1996) (Claimant's use of "over-the-counter pain relievers, such as
10   aspirin, suggests that the severity of her pain is not so great as to
11   preclude light exertional type work.").  Thus, plaintiff's testimony
12   conflicts with his lack of need for pain medication.

13

14       Third, the ALJ found plaintiff's complaints of a disabling heart
15   problem are inconsistent with the medical evidence since the heart
16   specialist "could not find a significant heart problem." A.R. 213.
17   "While subjective . . . testimony cannot be rejected on the sole
18   ground that it is not fully corroborated by objective medical
19   evidence, the medical evidence is still a relevant factor in
20   determining the severity of the claimant's [condition] and its
21   disability effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th
22   Cir. 2001); see also Burch, 400 F.3d at  681 ("Although lack of
23   medical evidence cannot form the sole basis for discounting pain

24   _____

25       [17]  Although plaintiff's most recent summary of the
26   medications he takes indicates he is taking Lansoprazole for
     "pain," this medication, also called Prevacid, is used to "block
27   the production of stomach acid" and "is prescribed for the short-
     term treatment . . . of duodenal ulcers. . . ." The PDR Family
28   Guide to Prescription Drugs, 534 (8th ed. 2000).

1  testimony, it is a factor that the ALJ can consider in his credibility

2  analysis."). Here, plaintiff was seen three times by a heart

3  specialist in Tijuana. <u>See</u> A.R. 124, 128, 184, 187 (electrocardio-

4  grams performed in Tijuana on March 13 and July 13, 1999); A.R. 120-

5  21, 179-81 (Doppler echocardiogram and cardiac stress test performed

6  in Tijuana on July 31, 1999). Dr. Ginns, a cardiologist, reviewed the

7  July 31, 1999 echocardiogram and stress test, conducted his own

8  electrocardiogram on plaintiff, and opined these tests showed

9  "evidence of a very mild impairment" that should not prevent plaintiff

10 from performing medium work. A.R. 153-55. Moreover, the recent

11 cardiac testing at County-USC on December 3, 2002, revealed no cardiac

12 abnormality. A.R. 306, 375, 409. Thus, the ALJ could properly base

13 his adverse credibility determination on inconsistencies between

14 plaintiff's complaints and the clinical findings. <u>Burch</u>, 400 F.3d at

15 681; <u>Regennitter v. Comm'r of the Soc. Sec. Admin.</u>, 166 F.3d 1294,

16 1297 (9th Cir. 1999).

17

18     Fourth, the ALJ found plaintiff is not credible because he claims

19 "other maladies . . . such as back, feet, and finger problems[,]" for

20 which he has received no significant treatment. A.R. 214. "[A]n

21 unexplained, or inadequately explained, failure to seek treatment

22 . . . can cast doubt on the sincerity of the claimant's pain

23 testimony[,]" <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989);

24 <u>Bruton</u>, 268 F.3d at 828, and it does so here when plaintiff has not

25 explained his failure to seek any treatment for his back or finger

26 complaints,[18] or explained why he has received no more than minimal

27 ─────────────

28     [18] Although plaintiff testified he had some acupuncture and
   massage treatment for his back, A.R. 236-37, this testimony is

14

1  treatment for any alleged foot problems.  <u>Burch</u>, 400 F.3d at 676;

2  <u>Bruton</u>, 268 F.3d at 828.

3

4      Although each and every reason the ALJ gave for rejecting

5  plaintiff's testimony may not necessarily support the ALJ's negative

6  credibility determination, it is clear that, here, the foregoing

7  reasons the ALJ gave "for his credibility determination were clear and

8  convincing, sufficiently specific, and supported by substantial

9  evidence." <u>Celaya v. Halter</u>, 332 F.3d 1177, 1181 (9th Cir. 2003);

10 <u>Burch</u>, 400 F.3d at 681.

11

12                              **ORDER**

13     IT IS ORDERED that: (1) plaintiff's request for relief is denied;

14 and (2) the Commissioner's decision is affirmed, and Judgment shall be

15 entered in favor of defendant.

16

17 DATE:  Sept. 21, 2006            /s/ Rosalyn M. Chapman
                                   ROSALYN M. CHAPMAN
18                                 UNITED STATES MAGISTRATE JUDGE

19 R&R-MDO\05-2447.mdo
   9/21/06

20

21

22

23

24 ─────────────────

25 not supported by the medical records.  A.R. 277-78.  Therefore,
   the ALJ could properly disregard plaintiff's testimony regarding
26 back treatment.  <u>See</u> <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124
   (9th Cir. 1990) ("'[A]n ALJ must be free to disregard self-
27 serving statements that cannot be verified, and the ALJ's
   assessment of credibility must be given great weight.'" (quoting
28 <u>Hudson v. Bowen</u>, 849 F.2d 433, 434 (9th Cir. 1988))).